[L. A. No. 9095. In Bank.—March 12, 1929.]

CHARLES O. PERRIN, Appellant, v. MOUNTAIN VIEW MAUSOLEUM ASSOCIATION et al., Respondents.

J. Marion Wright and Charles J. Wendland for Appellant.

Hewitt, Crump & Penn and Hewitt, McCormick & Crump for Respondents.

LANGDON, J.—This is an appeal from a judgment dismissing an action brought to secure a permanent injunction, restraining defendants from continuing to construct, maintain and operate upon property owned by the defendant association tombs, crypts and niches for the interment and burial of bodies of dead human beings and for the recovery of five thousand dollars damages alleged to have been caused to the adjoining property of plaintiff because of the partial erection of a mausoleum upon the property of said defendant association.

Objection was made to the introduction of any evidence on behalf of the plaintiff on the ground that the complaint did not state a cause of action and after this objection was sustained the court dismissed the action.

An examination of the complaint reveals that plaintiff pleads certain ordinances of the county of Los Angeles purporting to establish a residence district in Altadena, where the property of both the plaintiff and defendant, involved here, is situated; that defendants have been convicted in a criminal prosecution against them of violating these ordinances by the erection in such district of the mausoleum referred to and that, notwithstanding such conviction, the defendants intend to continue to violate said ordinances, and that the acts constituting such alleged violation have injured plaintiff by depreciating the value of his property. It thus appears that, primarily, plaintiff is seeking the enforcement of the ordinances referred to by injunctive proceedings.

Section 3369 of the Civil Code provides: "Neither specific nor preventive relief can be granted to enforce a penal law, except in a case of nuisance, nor to enforce a penalty or forfeiture in any case." ▮ This statutory enactment is but the expression of the fundamental rule that courts of equity are not concerned with criminal matters and they cannot be resorted to for the prevention of criminal acts, except where property rights are involved. (5 Pomeroy's Equity Jurisprudence, 2d ed., pp. 4291, 4292.) The text just cited, at pages 4294, 4295 thereof, contains the following pertinent language: "It is a general principle of law that an individual cannot maintain a suit to abate or to recover damages for a public nuisance unless she suffers some exceptional damage different and other from that suffered by the rest of the community. . . . Where the injury resulting from the nuisance is, in its nature, irreparable, as when loss of health, loss of trade or destruction of the means of subsistence or permanent ruin to property will inure from the wrong act or erection, courts of equity will interfere by injunction in furtherance of justice and the violated rights of property. Thus a party exceptionally injured may enjoin the maintenance of a house of ill-fame, although it be a crime to use property for such a purpose. Likewise, a person who would suffer a special injury by an explosion, may obtain an injunction to restrain the criminal storage of nitroglycerine within the limits of a city. Again, an injunction will be granted to a person expressly injured to prevent the removal of a wooden building from outside to within the fire limits of a town in violation of an ordinance, or to restrain the erection of such a building within the fire limits where the act, if carried out, would amount to a nuisance; but the mere violation of the ordinance is no ground for relief unless the acts themselves actually constitute a nuisance."

A nuisance is defined by our Civil Code, section 3479, as follows: "Anything which is injurious to health or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property."

In the case of *President etc. of Village of Waupun* v. *Moore*, 34 Wis. 450 [17 Am. Rep. 446], the court said: "The jurisdiction of courts of equity, in proper cases, to restrain

the erection or maintenance of nuisances, public or private, is undoubted. But the defendant was not about to erect a nuisance. If it is unlawful for him to erect the building in question, it is made so by the ordinance alone. Without the ordinance, no one can successfully dispute his right to do so. The question is, therefore: Will a court of equity enjoin an act which would otherwise be lawful, but which is made unlawful by a village ordinance or by-law?

"We find the principle stated in several very respectable authorities, that equity will not lend its aid to enforce by injunction the by-laws or ordinances of a municipal corporation, restraining an act, unless the act is shown to be a nuisance *per se*. (Citing authorities.)

"None of the cases to which we have been referred by the counsel for the plaintiffs holds that an injunction can properly issue under such circumstances, and we have been unable to find a case holding that doctrine. To hold that an injunction can properly issue in this case would be to overturn all of the authorities on the subject, and to interpolate into the law a new rule or principle of equity jurisprudence. This we have no right or authority to do. We may not make the law, but only declare it as we find it. We must hold, therefore, that, under the averments of the complaint no injunction can properly be issued to restrain the defendant from proceeding with the erection of his building, and that the village authorities can only resort to their legal remedies in that behalf."

In the case of *Incorporated Town of Rochester* v. *Walters et al.,* 27 Ind. App. 194 [60 N. E. 1101], it was said: "It is perhaps true that a municipality might restrain the erection or maintenance of anything within the corporate limits that was in and of itself a nuisance, or if the erection of the building would work special and irreparable injury to the municipality or to its property. But in the case at bar the erection of the prohibited building within the fire limits was not a nuisance *per se,* and the injunction was asked simply because the contemplated act was a violation of the ordinance. A city ordinance has to the people within its reach all the force and effect of a legislative enactment. The ordinance in question provides a penalty for its violation, and neither the municipality nor a private citizen can ask a court of equity simply to enforce the ordinance by injunc-

tion. The reasoning that would permit such a proceeding would authorize a court of equity to restrain by injunction the violation of a criminal statute. In the cases of *Village of St. Johns* v. *McFarlan*, 33 Mich. 72 [20 Am. Rep. 671], *President etc. of Village of Waupun* v. *Moore*, 34 Wis. 450 [17 Am. Rep. 446], and *Mayor of City of Manchester* v. *Smyth*, 64 N. H. 380 [10 Atl. 700], it was held that a court of equity has no jurisdiction to restrain the threatened violation of an ordinance unless the threatened act would, if carried out, be a nuisance. It is seen that in the above cases the injunction was sought by the municipality or its officers. Whether or not these cases intend to deny the right of an individual to maintain such an action under certain circumstances, although the threatened act may not be a nuisance *per se,* it is held in this state that an individual may maintain the action if he shows an express violation of the ordinance, although the act is not a nuisance *per se,* and shows in addition that the threatened act will work special and irreparable injury to him and to his property. (Citing authorities.)"

It has been held in this state that a cemetery is not a nuisance *per se.* In the case of *County of Los Angeles* v. *Hollywood Cemetery Assn.,* 124 Cal. 344 [71 Am. St. Rep. 75, 57 Pac. 153], it was said: "From the opinion of the learned judge who sat in the case (printed in the record), it is manifest that he regarded the establishment of a cemetery for the interment of human bodies as an avocation which may be well presumed to have an injurious tendency. It is not so stated, but the opinion proceeds, I think, upon the assumption that a cemetery is a nuisance *per se,* or at least may be so regarded in measuring the extent of the police power to regulate it. We cannot concur in this view, nor can we concur in the position that the business of conducting a cemetery is an avocation presumably having an injurious tendency."

In the case of *Hume* v. *Laurel Hill Cemetery,* 142 Fed. 552, it was said: "If the cemetery in question has never been and will not become a nuisance and is not dangerous to life or detrimental to the public health, it is not within the constitutional powers of the municipality to suppress it. (Citing authorities.) For the purpose of this hearing, the Laurel Hill Cemetery has not been and is not now indecent

to the senses, or offensive, or an obstruction to the free use of property. The offensiveness must as a rule consist in actual physical discomfort or a violation of the sense of decency. Mere undesirableness by reason of social or other prejudices is not sufficient, not even if it leads to a depreciation of the property.''

Without going into the controverted question as to whether or not a mausoleum is a cemetery within the meaning of the ordinances pleaded by plaintiff, and assuming for the present purposes that it is, we reach a conclusion that the violation of the ordinances alone would not permit plaintiff to secure the relief prayed for and that the complaint has not stated facts with relation to the operation or conduct of the mausoleum which would constitute it a nuisance *per se*, nor has it stated facts which would indicate that plaintiff has suffered some exceptional damage, other than that suffered by the public generally in that community due to the depreciation in value of residence property therein.

The judgment appealed from is affirmed.

Waste, C. J., Preston, J., Shenk, J., Richards, J., Seawell, J., and Curtis, J., concurred.